UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-88-GWU

ANGELA R. BURNS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

08-88   Angela R. Burns

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-88  Angela R. Burns

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

08-88  Angela R. Burns

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Angela R. Burns, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of diabetes mellitus and back, bilateral leg, and knee pain. (Tr. 19).  Nevertheless, based in part on the testimony of a Vocational Expert (VE) that the plaintiff would be capable of returning to her past relevant work as a sewing machine operator, cashier, and telephone operator/information clerk if she were limited to "medium" level exertion with no non-exertional restrictions, the ALJ determined that Mrs. Burns was not entitled to benefits.  (Tr. 19-25, 632-33).  The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

As the plaintiff points out on appeal, the ALJ rejected the functional restrictions provided by Dr. Marlene Bielecki, a family physician who was one of a team of doctors treating the plaintiff at the Mountain Comprehensive Health Corporation (MCHC).  The opinion of a treating physician is entitled to controlling

7

weight if it is supported by adequate signs, symptoms, and laboratory findings and is not contradicted by other objective evidence.  <u>Jones</u>, <u>supra</u>, 945 F.2d at 1370.  An ALJ is required by the Commissioner's regulations to give good reasons for declining to accept the opinion of a treating physician, and failure to do so may be grounds for reversal even if the decision is otherwise supported by substantial evidence.  <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541 (6th Cir. 2004).  When these standards are applied to the facts in the present case, it is apparent that a remand for further consideration will be required.

Dr. Bielecki completed a physical functional capacity form on December 30, 2004 which limited the plaintiff to lifting 10 pounds occasionally and less than 10 pounds frequently, standing and walking no more than four hours in an eight-hour day and sitting no more than four hours a day, with a need to alternate between sitting and standing at will.  (Tr. 322-3).  She listed additional restrictions including "never" climbing ladders and only occasionally twisting, stooping, bending, crouching, and climbing stairs as well as placing limitations on overhead reaching, fine manipulation, and exposure to environmental restrictions such as extreme cold and heat, wetness, humidity, fumes, odors, dust, gases, poor ventilation, and hazards such as machinery and heights.  (Tr. 323-4).  Dr. Bielecki described medical findings supporting her opinion as including the plaintiff's weight of 303 pounds and an MRI of the lumbosacral spine from March, 2004 showing severe degenerative disc disease and a bulge at L5-S1.  (Tr. 164, 323, 501).

08-88  Angela R. Burns

The ALJ rejected Dr. Bielecki's opinion as being unsupported, citing a "decision by a Worker's Compensation judge that was quite damaging to claimant's credibility," accompanied by medical opinions "stating there was extreme symptom magnification." (Tr. 24). He also cited a recent consultative evaluation by Dr. Mark Burns showing no lifting limitations at all. (Tr. 25).

As an initial matter, there is no decision by a Worker's Compensation judge included in the court's transcript, raising the possibility that it is incomplete. Nevertheless, there is an evaluation conducted for Worker's Compensation purposes by Dr. Timothy C. Kriss, a neurologist, dated March 22, 2005, which describes few objective abnormalities, states that the plaintiff was engaging in extreme symptom magnification and had a "psychosomatic presentation," and did not recommend any permanent restrictions. (Tr. 566-9).

Subsequently, in April, 2006, one of the plaintiff's treating sources at MCHC referred the plaintiff to a neurologist, Dr. Phillip Tibbs, for complaints of low back pain radiating into the right leg. (Tr. 367). Dr. Tibbs reviewed existing records, which also included a CT scan of the lumbosacral spine showing a very large right-sided osteophyte at L5-S1 impinging on the nerve root along with a disc herniation. (Tr. 365, 505). His examination showed an antalgic gait, a limited range of motion due to pain, reduced strength in the right ankle, and a positive straight leg raising test. (Tr. 367). Dr. Tibbs ordered a new MRI of the lumbosacral spine, which showed a large right disc protrusion and extrusion at L5-S1, impressing on the right

nerve root, which the radiologist opined could result in right L5-S1 radiculopathy. (Tr. 369).  It also showed degenerative disc disease with dessication and decreased disc height.  (Id.).  Dr. Tibbs concluded that the MRI definitely showed a disc herniation and referred Mrs. Burns to a colleague, Dr. Travis Jackson, another neurosurgeon, whose examination was also consistent with a herniated disc at L5-S1.  (Tr. 565).  He proceeded to perform "minimally invasive discectomy."  (Id.).

The plaintiff testified that she did not have follow-up with her surgeon, and had difficulty seeing doctors because of lack of insurance.  (Tr. 619, 626).

Mrs. Burns did have a consultative evaluation by Dr. Rita Ratliff on June 29, 2006, only 21 days after her back surgery, but she would not attempt many of the range of motion tests, complaining of pain from her recent surgery.  (Tr. 377).  Dr. Ratliff stated that she could not comment on any restrictions from back pain.  (Id.).[1]

Viewed in this light, the ALJ's use of the report of Dr. Kriss to discredit the restrictions of Dr. Bielecki is not supported by substantial evidence.  Dr. Kriss may have concluded that the plaintiff was a malingerer with no restrictions but subsequent objective testing, including the CT scan and MRI and the fact that two neurosurgeons concluded that the plaintiff did, in fact, have lumbosacral spine pain with radiculopathy, is inconsistent with his ultimate conclusion of no restrictions, and far more consistent with the view of Dr. Bielecki.

---

[1]Approximately six weeks later, Mrs. Burns underwent repeat surgery for repair of a hernia.  (Tr. 384).

08-88  Angela R. Burns

The other specific basis cited by the ALJ for rejecting Dr. Bielecki's opinion was a 2007 examination by Dr. Mark Burns, which found no physical abnormalities and no physical limitations. (Tr. 579-90). This examination was consistent with two prior consultative examinations by the same source in 2004 and 2005, which also found that the plaintiff's condition was completely normal. (Tr. 278-81, 355-63). Dr. Burns apparently did not have any objective testing at the time of his 2004 examination, such as the MRI reports, to review, placing him in a less convincing position to pronounce on the plaintiff's actual condition than Dr. Bielecki. His failure to find any physical abnormalities is at least somewhat curious in view of the objective findings mentioned elsewhere and the fact that even consultative mental status examiners noted the plaintiff's abnormal gait. (Tr. 329, 346). Most damaging of all, Dr. Burns obtained plain x-rays in connection with his 2005 and 2007 examinations, which he read as being completely normal. (Tr. 360, 582). These normal results are completely at odds with the CT scan and the two MRI scans obtained prior to the June, 2006 back operation, as well as a post-surgery December 21, 2006 x-ray obtained at MCHC showing narrowing of the disc space at L5-S1. (Tr. 507). It is difficult to understand how an individual with documented degenerative disc disease and who had undergone a laminectomy and discectomy could have a completely normal x-ray. All of these factors cast severe doubt on the trustworthiness of Dr. Burns's conclusions. Therefore, the court concludes that

08-88 Angela R. Burns

reliance on the reports of Dr. Kriss and Dr. Burns to overcome the opinion of Dr. Bielecki is not supported by substantial evidence.

The Commissioner, while apparently conceding that Dr. Bielecki was a treating source, argues in his brief that Dr. Bielecki qualified her comments by indicating that it had been ten months since she had last seen the plaintiff, that her input would be "minimal" and anyone helping her with a disability evaluation should request her other records. (Tr. 453). This might have been grounds for discounting Dr. Bielecki's opinion, but it was not one cited by the ALJ, which raises the issue of whether the ALJ gave good reasons in his decision for discounting the treating physician's opinion as required in Wilson. Moreover, Dr. Bielecki's comments also state that the plaintiff had "lots of medical records and documentation of her problems outlined in her chart by other providers," and the plaintiff's chart was clearly available to Dr. Bielecki at the time she completed her assessment, something that cannot be said of Dr. Burns.

The decision will be remanded for further consideration.

This the 29th day of January, 2009.



Signed By:
G. Wix Unthank
United States Senior Judge